UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW HAMPSHIRE

Andja Badry

    v.

Atrium Medical Corporation,
Maquet Cardiovascular US
Sales, LLC, and Getinge AB

Civil No. 16-cv-360-LM
Opinion No. 2019 DNH 159

In re: Atrium Medical Corp.
C-QUR Mesh Products Liability
Litigation (MDL No. 2753)

O R D E R

Andja Badry brings suit against Atrium Medical Corporation ("Atrium"), a medical device company that manufactured and sold C-QUR mesh, and two related companies, Maquet Cardiovascular US Sales, LLC ("Maquet") and Getinge AB ("Getinge"), alleging product liability claims, breach of warranties claims, and violation of consumer protection laws. Badry's suit is part of a multi-district litigation ("MDL") proceeding involving claims that C-QUR mesh was, among other things, defective and unreasonably dangerous and caused injury when surgically implanted for hernia repair. This case was selected in the MDL proceeding for the Initial Discovery Pool, making it a bellwether case. Defendants Atrium and Maquet move to dismiss on a variety of grounds.[1] Badry objects.

---

[1] Getinge has filed a separate motion to dismiss in the main MDL case contending that the court lacks personal jurisdiction over it. That motion remains pending. Getinge does not join in the instant motion.

## STANDARD OF REVIEW

Under Rule 12(b)(6), the court must accept the factual allegations in the complaint as true, construe reasonable inferences in the plaintiff's favor, and "determine whether the factual allegations in the plaintiff's complaint set forth a plausible claim upon which relief may be granted." Foley v. Wells Fargo Bank, N.A., 772 F.3d 63, 71 (1st Cir. 2014) (internal quotation marks omitted). A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009).

## BACKGROUND

In October 2015, Badry, a Louisiana resident, underwent a repair procedure for an umbilical hernia in a Louisiana hospital. Her physician used C-QUR mesh for the repair. Three weeks later, Badry was seen in the emergency room at University Medical Center because of chills and severe abdominal pain. A CT scan showed that Badry had a seroma in the area of the hernia repair and a procedure was scheduled to open the area, drain fluid, and remove the mesh. The procedure was delayed because of nature of the fluid in the area. Badry continued to receive treatment over the next four months for fluid drainage from the hernia repair site and other issues. The mesh was removed in March 2016, and the area then healed without further drainage or other problems.

Atrium, which designed, marketed, and sold the C-QUR mesh that was implanted into Badry, is located in New Hampshire. Maquet is located in New Jersey, and Getinge is a Swedish corporation. Badry alleges that Maquet and Getinge are responsible for Atrium's actions and

exercised control over Atrium with respect to oversight and compliance with applicable safety standards.

Badry alleges, among other things, that defendants designed, manufactured, marketed, and sold C-QUR mesh to be used by surgeons for hernia repair. C-QUR mesh was intended to be permanently implanted for those repairs, and defendants represented that C-QUR mesh was safe and effective for that purpose. Badry further alleges that C-QUR mesh was not safe or effective for its intended purpose, that defendants failed to adequately research and test it to determine the risks and benefits of the mesh, and that they failed to warn of risks although they had been notified that the mesh was causing widespread catastrophic complications. Badry brings claims for negligence (Count I), strict liability – design defect (Count II), strict liability – manufacturing defect (Count III), strict liability – failure to warn (Count IV), breach of express warranty (Count V), breach of implied warranties of merchantability and fitness of purpose (Count VI), and violation of consumer protection laws (Count VII). She seeks compensatory and enhanced damages.

## DISCUSSION

Defendants Atrium and Maquet contend that Louisiana law governs the liability portion of Badry's claims and that all of her claims fail under the applicable law. Badry objects, arguing that New Hampshire law applies to her claims and that her claims are sufficiently pleaded.[2]

---

[2] Badry argues in an eight-page section of her objection that an affirmative defense based on the statute of limitations is premature and that her claims are not untimely. Because defendants did not move to dismiss based on a statute of limitations defense, that issue is not before the court and will not be addressed.

I. Choice of Law

The parties agree that New Hampshire choice-of-law principles govern the choice of law in this bellwether case. See, e.g., Lexington Ins. Co. v. Gen. Acc. Ins. Co. of Am., 338 F.3d 42, 46 (1st Cir. 2003) (noting that in "determining what state law is relevant, a federal court must apply the choice-of-law framework of the forum state"). "Under New Hampshire choice-of-law principles, when more than one state may have an interest in the suit and the choice involves substantive law, the court must first decide whether relevant New Hampshire law actually conflicts with the laws of the other interested states." SIG Arms Inc. v. Emp'rs Ins. of Wausau, 122 F. Supp. 2d 255, 258–59 (D.N.H. 2000). An actual conflict exists only when application of the laws of an interested state other than the forum would change the outcome. Lambert v. Kysar, 983 F.2d 1110, 1114 (1st Cir. 1993). When no actual conflict is shown, the court will apply the law of the forum state which, in this case, is New Hampshire. Aftokinito Props, Inc. v. Millbrook Ventures, LLC, No. 09-cv-415-JD, 2010 WL 3168295, at *3 (D.N.H. Aug. 9, 2010). The party who asserts that the law of another state is different from the law of the forum state bears the burden of proving the content of the foreign law. SIG Arms, 122 F. Supp. 2d at 259.

A. Actual Conflict

Both New Hampshire, where Atrium manufactured the allegedly defective mesh products, and Louisiana, where the mesh was implanted, are interested states. Defendants assert that an actual conflict exists between the laws of New Hampshire and Louisiana because Louisiana has consolidated all product liability claims under the Louisiana Product Liability Act ("LPLA"), La. Rev. Stat. Ann. § 9:2800.52 et seq. In addition, they contend that strict liability claims and breach of implied warranty claims are not recognized under the LPLA. In contrast,

4

product liability in New Hampshire is governed by common law, which allows claims under a variety of theories, including strict liability and breach of implied warranty. See Short v. Amerada Hess Corp., No. 16-cv-204-JL, 2019 WL 1430106, at *15 (D.N.H. Mar. 29, 2019). Badry contends that she can pursue her strict product liability claims under Louisiana law and, therefore, defendants fail to identify an actual conflict and New Hampshire law controls. Alternatively, she contends that even if there is an actual conflict between New Hampshire and Louisiana law that necessitates a choice-of-law analysis, New Hampshire law governs.

Under the doctrine of dépeçage, "different substantive issues in a tort case may be resolved under the law of different states where the choices influencing decisions differ." Lacaillade v. Loignon Champ-Carr, Inc., No. 10-cv-68-JD, 2011 WL 4738654, at *1 (D.N.H. Oct. 7, 2011). Here, the legal standards for Badry's claims require different elements of proof. Therefore, dépeçage requires the court to consider the choice-of-law question separately for each claim.

Although defendants argue that the LPLA does not recognize the theory of strict product liability, the cases they offer do not appear to support that principle. For example, defendants cite Jefferson v. Lead Indus. Ass'n, Inc., 106 F.3d 1245, 1251 (5th Cir. 1997). In Jefferson, however, the Fifth Circuit appears to recognize the theory of strict liability under the LPLA but holds that plaintiffs may not bring a strict product liability claim independent of the LPLA. See id. ("While the statutory ways of establishing that a product is unreasonably dangerous are predicated on principles of strict liability, negligence, or warranty, respectively, neither negligence, strict liability, nor breach of express warranty is any longer viable as an independent theory of recovery against a manufacturer."). They further rely on Barrette v. Dow Agrosciences, L.L.C., No. CIV.A. 02-1677, 2002 WL 31365598, at *3 (E.D. La. Oct. 18, 2002),

5

but that case similarly holds only that a plaintiff cannot pursue a claim based on strict product liability independently of the LPLA. See id. at *3 n.5 (denying the defendant's request to strike a paragraph in the plaintiff's complaint because plaintiff was permissibly asserting a strict product liability claim under the LPLA, rather than a stand-alone strict product liability claim). Although the LPLA abrogated common law strict product liability claims, defendants have not shown that the same claims are unavailable under the Act.

Defendants correctly identify an actual conflict with respect to Badry's breach of implied warranties claim in Count VI, however. The LPLA does not recognize a claim based on breach of implied warranty against product manufacturers, see Barrette, 2002 WL 31365598, at *2, while New Hampshire does recognize such a claim, see RSA 382–A:2–314. Therefore, defendants have carried their burden to show an actual conflict as to Badry's breach of implied warranties claim in Count VI, and the court employs a choice-of-law analysis with respect to that claim.

With respect to the remaining claims, however, defendants have not carried their burden to show an actual conflict. Although they show that certain differences exist between New Hampshire and Louisiana law as to some of Badry's claims, they fail to show that she could not allege facts that would satisfy the standard imposed by Louisiana law. Because defendants have not carried their burden as to Badry's claims other than her claim for breach of the implied warranties of merchantability and fitness of purpose, Count VI, the court will apply New Hampshire law to the liability portion of Badry's other claims. See Aftokinito, 2010 WL 3168295, at *3.

B. Choice of Law for Count VI

New Hampshire uses a five-factor test for choice of law: "(1) predictability of results; (2) maintenance of reasonable orderliness and good relationship among the states in our federal system; (3) simplification of the judicial task; (4) advancement by the court of its own state's governmental interests rather than those of other states; and (5) the court's preference for what it regards as the sounder rule of law." Matter of Geraghty, 169 N.H. 404, 409 (2016). "The relative importance of each factor varies depending on the type of case." Lacaillade, 2011 WL 4738654, at *2.

The first three factors have little or no relevance in this case. The first factor—predictability of results—"is usually implicated only in suits involving contractual or similar consensual transactions and emphasizes the importance of applying to the parties' bargain or other dealings the law on which they agreed to rely at the outset." Stonyfield Farm, Inc. v. Agro-Farma, Inc., No. 08-cv-488-JL, 2009 WL 3255218, at *7 (D.N.H. Oct. 7, 2009) (internal quotation marks and citations omitted). Thus, the first factor has no weight here.

The second factor—maintenance of reasonable orderliness and good relationship among the states in our federal system—requires only that the court avoid applying the law of a state "which does not have substantial connection with the total facts and with the particular issue being litigated." Lessard v. Clarke, 143 N.H. 555, 557 (1999) (internal quotation marks and citation omitted). Both Louisiana and New Hampshire have substantial connections with the facts in this case. Badry's surgeries occurred in Louisiana, and Atrium is located in New Hampshire and manufactures and sells its C-QUR mesh products here. Thus, the second factor has little relevance.

With respect to the third factor—simplification of the judicial task—the court is of course more accustomed to New Hampshire product liability and warranty law but could also apply Louisiana law with little difficulty. See Lacaillade, 2011 WL 4738654, at *3 ("Although it may be easier for a court to apply the forum state's substantive law, it certainly cannot be argued that Maine's law regarding the relevant issue is so complex as to outweigh other competing considerations."). Therefore, none of the first three factors tips the balance on the choice-of-law analysis in this case.

The fourth factor considers the advancement of the forum state's governmental interests. This factor "becomes important only when New Hampshire has a particularly strong policy in reference to local rules of law, which the other state[']s laws under consideration would fail to achieve." Stonyfield Farm, 2009 WL 3255218, at *8 (internal quotation marks, citation, and alterations omitted). "Otherwise, New Hampshire's interest is limited to the fair and efficient administration of justice." Id. (internal quotation marks and citations omitted). Here, as in many other cases, this factor is of limited importance. To the extent it carries any weight, however, it favors the application of New Hampshire law. New Hampshire has an interest in the liability of a New Hampshire company for injuries caused by its products. See, e.g., Lacaillade, 2011 WL 4738654, at *3 n.4 (noting that New Hampshire has an interest in regulating the liability of its corporations); see also Turcotte v. Ford Motor Co., 494 F.2d 173, 178 (1st Cir. 1974). Therefore, the fourth factor has little relevance but, to the extent it carries any weight, it favors the application of New Hampshire law.

The fifth factor—the sounder rule of law—"allows the court, where everything else is equal, to choose to apply [a] state's rule that it regards as wiser, sounder, and better calculated to serve the total ends of justice, especially where one state's rule lies in the backwater of the

modern stream." TIG Ins. Co. v. EIFlow Ins. Ltd., No. 14-cv-459-JL, 2015 WL 5714686, at *6 (D.N.H. Sept. 29, 2015) (internal quotation marks and citation omitted). "As such, [this factor] tends to play a tie-breaker role in close cases." Id. (internal quotation marks and citation omitted). The sounder rule of law depends on the policies behind the conflicting laws and the court's view of "the socio-economic facts of life at the time when the court speaks." Geraghty, 169 N.H. at 412. This factor applies "even when the injury occurs out of State." LaBounty v. Am. Ins. Co., 122 N.H. 738, 743 (1982).

Defendants argue that Louisiana provides the sounder rule of law because the LPLA is "specifically designed to help simplify the issues to be addressed by the Court and expedite the judicial process." Doc. no. 174-1 at 6. They also contend that the "statute is also designed to consolidate and unify all theories of product liability under the terms of the statutory scheme." Id.

For the reasons stated above, however, the court applies New Hampshire law to Badry's other claims. Therefore, to the extent defendants' efficacy-based arguments would generally weigh in favor of applying Louisiana law, they are not applicable in the circumstances of this case.

Louisiana restricts the availability of breach of implied warranty claims in the context of product manufacturers, such as defendants. In contrast, New Hampshire has chosen to put the risk of liability for injury caused by products on product manufacturers and sellers:

> The reasons for the evolution of the law in the area of products liability are many. We live in an era of national advertising and of nationwide distribution which can add or remove a product from our store shelves in a matter of days. Many of those nationally sold products contain chemical compounds and synthetics the side effects of which clearly cannot be anticipated. It is believed that if today's products are capable of causing illness or physical injury, the risk of liability is best borne by the companies that profited from their sale, rather than by the unfortunate individual consumers.

Heath v. Sears, Roebuck & Co., 123 N.H. 512, 521 (1983); see also Connelly v. Hyundai Motor Co., 351 F.3d 535, 539 (1st Cir. 2003) ("The New Hampshire Supreme Court has consistently declined to adopt the rule urged by Hyundai—that a trial court may not instruct a jury on both strict liability and negligence counts in a product liability action."); State v. Exxon Mobil Corp., 168 N.H. 211, 247-50 (2015) (discussing the development of New Hampshire's product liability law and the efforts to avoid the "practically impossible burden" that many plaintiffs face in such cases).

In the absence of any showing by defendants that Louisiana provides the sounder rule of law in the circumstances of this case, the fifth factor weighs in favor of New Hampshire law and tips the balance in that direction. The court will therefore apply New Hampshire law to the liability portion of all claims in this case.

II. Merits of the Claims

Defendants move to dismiss all of Badry's claims, arguing that her claims fail because they were not brought under the LPLA and because her allegations are insufficient to state certain claims under the Act. Because New Hampshire law, not Louisiana law, governs Badry's claims, defendants' motion to dismiss does not address the applicable law and their arguments as to these claims are without merit.[3]

---

[3] Defendants argue in a single-sentence footnote that even if New Hampshire law applies, Badry's New Hampshire Consumer Protect Act claim fails because her complaint lacks specificity with respect to any alleged unfair and deceptive conduct. In light of the brevity with which defendants assert that argument, the court denies defendants' motion to dismiss as to that claim. See United States v. Zannino, 895 F.2d 1, 17 (1st Cir. 1990) ("It is not enough merely to mention a possible argument in the most skeletal way, leaving the court to do counsel's work . . . .").

## CONCLUSION

For the foregoing reasons, defendants' motion to dismiss (doc. no. 174) is denied.

SO ORDERED.

_____
Landya B. McCafferty
United States District Judge

September 19, 2019

cc: Counsel of Record